IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JESS A. MAY                                                                                           PLAINTIFF

VS.                                          CIVIL NO. 05-4056

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                        DEFENDANT

## MEMORANDUM OPINION

Jess May ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB"), and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on May 28, 2003, alleging an onset date of March 22, 2001, due to right hip, leg, and lower back pain. (Tr. 13, 31, 64, 74, 231). An administrative hearing was held on November 2, 2004. (Tr. 237-268). Plaintiff was present and represented by counsel.

The Administrative Law Judge ("ALJ"), entered a written opinion on February 16, 2005, finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 23). At this time, plaintiff was thirty-seven years old and possessed the equivalent of a high school education. (Tr. 64, 80). The record reveals that he has past relevant work ("PRW"), as a construction worker and cook's helper. (Tr. 75).

AO72A
(Rev. 8/82)

After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC"), to perform a wide range of sedentary work, limited only by his ability to lift and/or carry no more than ten pounds, stand and/or walk for two hours total during an eight-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 24). With the assistance of a vocational expert, the ALJ then found that plaintiff could still perform work existing in significant numbers in the national economy, to include positions as a hand assembler and driller. (Tr. 24).

On July 12, 2005, the Appeals Council declined to review this decision. (Tr. 5-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

AO72A
(Rev. 8/82)

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final

AO72A
(Rev. 8/82)

stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the evidence reveals that plaintiff has been treated for chronic back and right hip pain since March 22, 2001, when he injured his back while carrying a one hundred-pound box. (Tr. 15). In August 2001, plaintiff reported the occasional loss of control in his back and leg, resulting in multiple falls. (Tr. 120). At that time, an examination revealed paralumbar muscular spasms, point tenderness with increased pain to lateral bending and extension, a positive straight-leg

AO72A
(Rev. 8/82)

raise test, tenderness to palpation in the hip and groin, and decreased strength in his lower extremity. (Tr. 123). Further, an x-ray of plaintiff's pelvis revealed vascular calcifications. (Tr. 126).

In October 2001, Dr. Mohammad Hussain diagnosed plaintiff with possible osteoarthropathy of the apophyseal joints, spinal degenerative joint disease, lumbar radiculopathy, and possible sacroilitis and thoracic spinal stenosis. (Tr. 132). His examination revealed weakness in the extremities, right side greater than left; mildly decreased strength in the distal muscles of the right lower extremity; tenderness in the lumbar spine; and, decreased perception in the lateral third of the left leg. (Tr. 132).

In July 2002, plaintiff sought emergency treatment after his back "locked up." (Tr. 136). He was diagnosed with lumbar strain with spasm and radicular symptoms, after an examination revealed paraspinous tenderness and spasm. (Tr. 136-137). The doctor prescribed Lortab, Vioxx, Medrol, Skelaxin, and ice therapy. (Tr. 136).

In August 2002, plaintiff was treated for back pain and leg pain on three separate occasions. (Tr. 142, 145, 148). In mid-August, plaintiff was noted to have numbness around the abdominal wall, as well as mild numbness on the right side. (Tr. 145). On August 23, 2002, records indicate that an x-ray of plaintiff's lumbar spine revealed some degenerative changes. (Tr. 149). Plaintiff was prescribed pain medication and muscle relaxers, such as Robaxin, Anaprox, Vicodin, Norflex, Toradol, and Ultram. (Tr. 142, 145, 148).

In May 2003, x-rays of plaintiff's right hip revealed a possible old stress injury to the femoral neck. (Tr. 180). Further, radiographs of his lumbar spine showed mild spondylosis at the

AO72A
(Rev. 8/82)

thoracolumbar junction and spina bifida occulta at the S1 level.[1] Stephanie Hickerson, a nurse practitioner practicing with Dr. R. Mayo at the Christus St. Michael Family Clinic, prescribed Hydrocodone and Flexeril. (Tr. 181). Plaintiff was noted to have paravertebral spasms, spinous process tenderness, and a positive straight-leg raise test. (Tr. 181).

In June 2003, Ms. Hickerson noted that plaintiff had a poor range of motion in his right hip, pain in his right hip with straight-leg raise testing, decreased strength in his right leg, and reduced spinal mobility. (Tr. 177). She prescribed Flexeril, Hydrocodone, Mobic, and Ultracet. (Tr. 178).

Records dated from August 2003, until November 2003, indicate that Ms. Hickerson consistently prescribed Hydrocodone, Flexeril, and Mobic. (Tr. 191-192, 194-195, 199). On several occasions, she also prescribed Ultracet to help alleviate plaintiff's pain. (Tr. 195, 199).

In February 2004, plaintiff was treated by Mary Stanley, another nurse practitioner at Dr. Mayo's clinic. (Tr. 214-216). Ms. Stanley diagnosed plaintiff with hypertension, right hip pain, and back pain. For this, she prescribed Flexeril, Capozide, Mobic, and Hydrocodone. Because plaintiff also reported problems with anxiety, Ms. Stanley prescribed Zoloft. (Tr. 214-216). Records indicate that plaintiff consistently obtained refills of these medications between February 2004, and October 2004. (Tr. 217, 220-223).

On March 16, 2004, Ms. Stanley completed an RFC assessment of plaintiff for Dr. Mayo.

---

[1] A common congenital midline defect of fusion of the vertebral arch without protrusion of the spinal cord or meninges. Robert J. Joynt, CLINICAL NEUROLOGY, p. 34 (1992). The lesion is also covered by skin. *Id.* L5 and S1 are the most common vertebrae involved. *Id.* The majority of individuals with this malformation are asymptomatic, although there is an increased incidence of tethered cord syndrome and lumbar spondylosis. *Id*.

6

(Tr. 228-230). This assessment was signed by both Dr. Mayo and Ms. Stanley. The assessment revealed that plaintiff was capable of lifting a maximum of ten pounds frequently and occasionally, could stand/walk less than two hours during an eight-hour workday, could sit less than two hours during an eight-hour workday, would require a break every thirty minutes to walk around for thirty minutes, would need to be able to sit/stand at will, and would need to lie down two to three times per day. Dr. Mayo and Ms. Stanley indicated that plaintiff's MRI supported this assessment, noting a stress injury to plaintiff's femoral neck. Further, they stated that plaintiff should never twist, stoop, crouch, or climb ladders, and should only occasionally climb stairs, as these activities could cause further damage to plaintiff's femoral head. They also advised that he avoid concentrated exposure to wetness. (Tr. 230).

In spite of this evidence, the ALJ concluded that plaintiff could perform a wide range of sedentary work, limited only by his ability to lift and/or carry no more than ten pounds, stand and/or walk for two hours total during an eight-hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 24). He did not, however, consider Dr. Mayo's and Ms. Stanley's notation that plaintiff should never twist, stoop, crouch, or climb ladders, as this may cause further damage to plaintiff's hip. (Tr. 230). We note that a treating physician's opinion is generally entitled to substantial weight. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003). Accordingly, we believe remand is necessary to allow the ALJ to reevaluate plaintiff's RFC.

Also of significance is the fact that the ALJ failed to properly consider plaintiff's medications and the possible side effects of those medications. (Tr. 136, 137, 142, 145, 148, 178, 181, 195, 199, 214-216). In his opinion, the ALJ incorrectly stated that plaintiff had a history of conservative

7

treatment for his alleged impairments, consisting of nothing more than prescriptions for "modest dosages of medication." (Tr. 20-21). However, as indicated above, among other medications, the record reveals that plaintiff was prescribed Hydrocodone, Flexeril, and Zoloft. (Tr. 143, 155, 176-177, 181, 191-192, 194-195, 199, 214, 215-216, 217-223). We note that Hydrocodone is a semisynthetic narcotic analgesic that affects the central nervous system. PHYSICIAN'S DESK REFERENCE, pp. 531 (60th ed. 2006). It is used to treat moderate to moderately severe pain. *Id*. Frequently reported side effects include lightheadedness, dizziness, sedation, nausea, and vomiting. *Id*. at 532. Zoloft is a selective serotonin reuptake inhibitor used to inhibit the central nervous system's neural uptake of Serotonin, thereby treating depression and anxiety symptoms. *Id*. at 2583-2584. Common side effects associated with Zoloft include dizziness and fatigue. *Id*. Flexeril is a muscle relaxer used to relieve skeletal muscle spasm without interfering with muscle function. *Id*. at 1832. Its side effects include, drowsiness, dry mouth, fatigue, and headache. *Id*. However, when used in conjunction with other medications affecting the central nervous system, such as narcotic pain medications and antidepressants, testing has shown that Flexeril may impair the mental and/or physical abilities needed for the performance of hazardous tasks, such as operating machinery or driving a vehicle. *Id*. at 1833. However, the ALJ failed to consider both the fact that these medications were prescribed, and the possible side effects of each medication. He also failed to consider the side effects possible when these medications are used simultaneously. As such, the ALJ is reminded of his duty to consider all of the evidence relating to plaintiff's subjective complaints, including evidence that relates to the dosage, effectiveness, and side effects of his medications. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Therefore, on remand, he is directed to

AO72A
(Rev. 8/82)

determine what effect these medications may have had on plaintiff's ability to perform work-related activities. *Id*.

The ALJ also erred in discounting plaintiff's allegations of disabling pain because he had been treated medically, not surgically, for his impairments. (Tr. 20-21). "No medical report suggests that [plaintiff] has not been pursuing a valid course of treatment." *Tate v. Apfel*, 167 F.3d 1191, 1197 (8th Cir. 1999). No doctor has recommended surgery for his condition. (Tr. 120-230). Accordingly, on remand, the ALJ should reconsider plaintiff's subjective complaints in light of the fact that surgical intervention has not been a recommended mode of treatment, according to the record.

## Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 21st day of September 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)